Note: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1471

PHILIP E. BOYNTON, CLARENCE W. BOYNTON, RICHARD M. BOYNTON,
NORMA ANN LOGAN, RENELDA J. WESTFALL, SHANNON NONN,
AARON SCOTT BERNARD, ALAN F. BERNARD, LINDA R. BERNARD,
and DAVID ALAN BERNARD,

Plaintiffs-Appellants,

v.

HEADWATERS, INC.
(formerly known as Covol Technologies, Inc.),

Defendant-Appellee.

Jeffrey A. Greene, of Nashville, Tennessee, argued for plaintiffs-appellants.

Brent P. Lorimer, Workman Nydegger, of Salt Lake City, Utah, argued for defendant-appellee. With him on the brief were David R. Todd, R. Parrish Freeman, and Joseph G. Pia.

Appealed from: United States District Court for the Western District of Tennessee

Judge Jon Phipps McCalla

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1471

PHILIP E. BOYNTON, CLARENCE W. BOYNTON, RICHARD M. BOYNTON,
NORMA ANN LOGAN, RENELDA J. WESTFALL, SHANNON NONN,
AARON SCOTT BERNARD, ALAN F. BERNARD, LINDA R. BERNARD,
and DAVID ALAN BERNARD,

Plaintiffs-Appellants,

v.

HEADWATERS, INC.
(formerly known as Covol Technologies, Inc.),

Defendant-Appellee.

DECIDED:  July 27, 2007

Before SCHALL and BRYSON, Circuit Judges, and HOLDERMAN, District Judge.[*]

SCHALL, Circuit Judge.

Plaintiffs-appellants Philip E. Boynton and nine other individuals (collectively "plaintiffs") brought suit against Headwaters, Inc. (formerly known as Covol Technologies, Inc.) ("Headwaters") in the United States District Court for the Western District of Tennessee.  Plaintiffs now appeal the judgment of the district court that dismissed their patent infringement claim on the pleadings and their civil conspiracy,

_____
[*]      Honorable James F. Holderman, Chief Judge of the United States District Court for the Northern District of Illinois, sitting by designation.

interference with contract, and constructive trust claims on summary judgment. Boynton v. Headwaters, Inc., No. 02-1111 (Feb. 2, 2006) ("Order Dismissing Civil Conspiracy and Constructive Trust Claims"); Boynton v. Headwaters, Inc., No. 02-1111 (Jan. 13, 2004) ("Order Dismissing Interference With Contract Claim"); Boynton v. Headwaters, Inc., No. 02-1111 (Sept. 30, 2003) ("Order Dismissing Patent Infringement Claim"). We affirm-in-part, vacate-in-part, and remand.

## DISCUSSION

### I.

In the late 1980s, plaintiffs invested in Adtech, Inc. of Illinois, which was incorporated in Illinois on November 23, 1987 (the "First Adtech"). The First Adtech was created for the single purpose of developing and commercializing coal agglomeration technology. Coal agglomeration is a process by which coal, rock, and other materials are combined into larger pieces, while certain undesirable impurities are removed.

James G. Davidson, a former defendant in this lawsuit, ran the operations of the First Adtech. Mr. Davidson applied for a patent on the coal agglomeration process and, in the patent application transmittal letter, assigned the patent to the First Adtech on July 29, 1991, in consideration for a payment of $10,000 from funds invested in the First Adtech by plaintiffs. The United States Patent and Trademark Office ("PTO") issued the coal agglomeration patent on August 24, 1993, as U.S. Patent No. 5,238,629 ("the '629 patent").

On April 1, 1991, the First Adtech was administratively dissolved by the Illinois Secretary of State for failure to file its legally required annual report. As a result of the dissolution and nonreinstatement[1] of the First Adtech, the assignment of the '629 patent on July 29, 1991 to the First Adtech was an ineffective transfer of rights, as no transferee existed.

In their complaint,[2] plaintiffs allege that Mr. Davidson deceived plaintiffs by continuing to run the First Adtech as though it had not been dissolved. Plaintiffs further allege that, beginning around 1998, Mr. Davidson engaged in a scheme to defraud them by secretly negotiating and purporting to sell the rights to the '629 patent and the related proprietary information to Headwaters. As part of the scheme, plaintiffs assert, Mr. Davidson incorporated a new Adtech, Inc. of Illinois on May 14, 1993 ("the Second Adtech"), without informing them. Plaintiffs allege that Mr. Davidson thereafter sought to cause a plausible chain of title to be reflected in 1998 sale documents relating to the patent and the proprietary information by executing documents that appeared to be authorized by the First Adtech, in whose name the documents purporting to assign the '629 patent were written.

---

[1] Illinois law permanently precludes the reinstatement of an administratively dissolved company five years after the administrative dissolution. See 805 Ill. Comp. Stat. 5/12.80. Consequently, the First Adtech was by law precluded from reinstatement as of April 1, 1996.

[2] References to the "complaint" are to the complaint in plaintiffs' suit against Headwaters, filed May 6, 2002, and later to plaintiffs' first amended complaint filed October 16, 2003.

According to the complaint and later sworn statements by Mr. Davidson in his settlement agreement with plaintiffs,[3] Headwaters, knowing that the sale documents did not accurately reflect the transaction, drafted the documents for the purchase of the '629 patent, and assisted in concealing Mr. Davidson's fraud from plaintiffs.

Plaintiffs contend that they first learned about the 1998 sale of the '629 patent to Headwaters and the 1998 sale of the 1996 Carbontec license agreement[4] to Headwaters when Mr. Davidson disclosed the transactions in a May 1999 "Report to Shareholders." On August 21, 2000, three of the plaintiffs in the present lawsuit filed suit, on behalf of the First Adtech against Mr. Davidson and Headwaters in the Western District of Tennessee. Adtech, Inc. of Illinois v. Davidson, No. 00-1244 (W.D. Tenn. 2001). In that lawsuit, the complaint alleged that Mr. Davidson defrauded the First Adtech in connection with the transfer of the '629 patent and the Carbontec license agreement to Headwaters and that Headwaters had conspired with Mr. Davidson to commit the fraud.

On August 28, 2001, the district court dismissed the action for lack of standing. Specifically, the court concluded that the purported August 24, 1991 assignment of the '629 patent to the First Adtech was not an effective transfer of rights because the assignment was executed after the First Adtech had been dissolved on April 1, 1991. Therefore, the court concluded, the First Adtech did not have standing to bring the

---

[3] As noted below, plaintiffs settled all claims against Mr. Davidson on September 9, 2005.

[4] On July 17, 1996, a licensing agreement relating to the '629 patent was executed between Carbontec Energy Corporation ("Carbontec") and, at the time, the nonexistent "Adtech, Inc. of Illinois." This licensing agreement was assigned to Headwaters along with the '629 patent.

action because it never owned the '629 patent.

On May 6, 2002, plaintiffs filed the current lawsuit in their individual capacities against Headwaters, Mr. Davidson, and A. Graydon Hoover (Mr. Davidson's accountant). Plaintiffs sought both a declaratory judgment as to the proper owner of the '629 patent and monetary damages for patent infringement. According to the complaint, Headwaters' ownership and failure to commercialize the patent constituted patent infringement. Plaintiffs also asserted multiple state law claims, including fraud and civil conspiracy, breach of constructive trust, breach of fiduciary duty for resulting trust, conversion, breach of contract, and interference with contract.

In response to the complaint, Headwaters filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The district court granted the motion in part and dismissed the following claims: the patent infringement claim, the fraud portion of the fraud and civil conspiracy claim, and a portion of the constructive trust claim. Order Dismissing Patent Infringement Claim, slip op. at 1-21. As to the patent infringement claim, because the district court found that plaintiffs did not "even allege that [Headwaters] produces, uses, or sells the threatened technology," the district court concluded that plaintiffs had alleged no set of facts for which a claim of infringement could stand and plaintiffs' case thus did not arise under federal patent law. Id. at 9. The district court dismissed the fraud claim on the ground that plaintiffs failed to allege that Headwaters had made any material misrepresentations to plaintiffs or that plaintiffs had relied on any false representations from Headwaters. Id. at 15. As far as the constructive trust claim was concerned, the court found that plaintiffs had failed to state a claim upon which relief could be granted because, in order to have a claim for

breach of constructive trust, a party must first obtain a judicial decision creating a constructive trust. The court then noted that plaintiffs had stated a claim for the creation of a constructive trust. The district court additionally ordered plaintiffs to file an amended complaint pleading subject matter jurisdiction based on diversity with respect to the surviving state law claims. Id. at 20. Plaintiffs then filed a first amended complaint based on diversity jurisdiction.

In due course, Headwaters moved for summary judgment on the interference with contract claim and the conversion claim, which motion the district court granted. Order Dismissing Interference With Contract Claim, slip op. at 1-13. The district court found that there was no evidence in the record of a contract—oral or otherwise— between Mr. Davidson and plaintiffs with which Headwaters could interfere. Id. at 11-12.

In October of 2004, plaintiffs dismissed the claims against Mr. Hoover as a result of his filing for bankruptcy. Prior to Mr. Hoover's dismissal, both Mr. Hoover and Mr. Davidson moved for summary judgment as to all counts asserted against them. After Mr. Hoover's dismissal, the district court dismissed Mr. Hoover's motion as moot and granted in part and denied in part Mr. Davidson's motion. The district court granted Mr. Davidson's motion as to the conversion and breach of contract claims and denied his motion as to the fraud and civil conspiracy claim and the constructive trust claim.

By mid-2005, plaintiffs' remaining claims against Mr. Davidson were for fraud and civil conspiracy, constructive trust, and breach of fiduciary duty, while plaintiffs' remaining claims against Headwaters were for civil conspiracy and constructive trust.

On September 9, 2005, plaintiffs settled their remaining claims with Mr. Davidson, and the district court dismissed those claims with prejudice on September 26, 2005. In the settlement agreement, plaintiffs released Mr. Davidson from liability, but specifically did not release Headwaters. Thereafter, on October 31, 2005, Headwaters filed a motion for summary judgment on the remaining claims of civil conspiracy and constructive trust. The district court granted the motion on February 2, 2006. Order Dismissing Civil Conspiracy and Constructive Trust Claims, slip op. at 1-12. In so doing, the court held that the civil conspiracy claim could not stand because there was no longer an underlying predicate act, since the tort claims Mr. Davidson had been dismissed. Id. at 8-10. Similarly, the court held that there were no remaining substantive claims to support a request for the imposition of a constructive trust. Id. at 10-11.

Plaintiffs timely filed a notice of appeal. We have jurisdiction over their appeal pursuant to 28 U.S.C. § 1295(a)(1).

II.

Our review of both the district court's grant of judgment on the pleadings and its grant of summary judgment is de novo. Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 761 (6th Cir. 2006); May v. Franklin County Comm'rs, 437 F.3d 579, 583 (6th Cir. 2006).

On appeal, plaintiffs argue that the district court erred in dismissing their patent infringement claim under FRCP Rule 12(c). They contend that the court overlooked their claim for damages based on Headwaters' receipt of royalties under the Carbontec license agreement assigned to Headwaters. According to plaintiffs, Headwaters'

purchase of the Carbontec license agreement and the acceptance of royalties under that agreement were sufficient to create liability for inducement of infringement under 35 U.S.C. § 271(b). Headwaters responds that it cannot induce infringement by Carbontec since Carbontec cannot be a direct infringer as a licensee.

We agree with Headwaters that Carbontec cannot be a direct infringer as a licensee, and that Headwaters therefore cannot be liable for inducement of infringement. See, e.g., Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 774 (Fed. Cir. 1993). Consequently, even if plaintiffs' complaint could be interpreted to suggest an inducement claim, such a claim would necessarily fail due to the lack of direct infringement. We therefore hold that the district court did not err in dismissing plaintiffs' patent infringement claim on the pleadings.

Plaintiffs also challenge the district court's grant of partial summary judgment on their interference with contract claim, arguing that the record supports the existence of an express, oral contract between plaintiffs and Mr. Davidson or, in the alternative, an implied-in-fact contract. In response, Headwaters directs our attention to the fact that the second affidavit of plaintiff Philip E. Boynton, which plaintiffs cite as evidence of a contract, was executed on April 30, 2004, approximately four months after the district court granted Headwaters' summary judgment motion. We conclude that plaintiffs did not present evidence in the record before the district court prior to the court's decision that showed the existence of an express contract or an implied-in-fact contract. Because the record does not establish the existence of an express contract or an implied-in-fact contract, the court did not err in granting summary judgment on plaintiffs' interference with contract claim.

III.

Although we affirm the decision of the district court as to the patent infringement and interference with contract claims, we vacate the court's grant of summary judgment as to the civil conspiracy claim. According to plaintiffs, the district court erred in holding that plaintiffs' settlement with Mr. Davidson, and subsequent dismissal with prejudice of the fraud claim against Mr. Davidson, left no actionable tort to support the civil conspiracy claim against Headwaters. Headwaters answers that the district court correctly granted summary judgment on the civil conspiracy claim because Headwaters' alleged civil conspiracy liability was vicarious to Mr. Davidson's direct liability. Headwaters therefore reasons, based upon the doctrine of respondeat superior,[5] that the district court's dismissal of the fraud claim against Mr. Davidson also extinguished the civil conspiracy claim against Headwaters.

A civil conspiracy under Tennessee law is "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002). A civil conspiracy claim requires an actionable underlying substantive claim. Tenn. Publishing Co. v. Fitzhugh, 52 S.W.2d 157, 158 (Tenn. 1932) ("[A] conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action."); see also Levy v. Franks,

---

[5]     Under the respondeat superior doctrine, a master is vicariously liable for the torts of his servant, but when the claim against his servant fails, the claim for vicarious liability against the master also automatically fails. See D.V. Loveman Co. v. Bayless, 160 S.W. 841, 842 (Tenn. 1913).

159 S.W.3d 66, 82 (Tenn. Ct. App. 2004) ("[T]here is not liability under a theory of civil conspiracy unless there is underlying wrongful conduct."). Accordingly, "if the claim underlying the allegation of civil conspiracy fails, the conspiracy claim must also fail." Levy, 159 S.W.3d at 82.

We hold that the district court erred in equating the procedural consequences of the dismissal of the claims against Mr. Davidson with whether plaintiffs, at a trial against Headwaters, could establish an actionable underlying substantive fraud claim against Mr. Davidson. The district court relied on case law holding that the dismissal with prejudice of claims acts as a final adjudication on the merits. See, e.g., Warfield v. AlliedSignal TBS Holdings, Inc., 267 F.3d 538, 542 (6th Cir. 2001). ("A voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect."). However, while a dismissal with prejudice constitutes an adjudication on the merits in favor of Mr. Davidson and results in claim preclusion (i.e., res judicata) as against Mr. Davidson, a dismissal with prejudice does not indicate that no actionable underlying substantive fraud claim exists against Mr. Davidson in the context of a civil conspiracy claim against Headwaters.

We reject Headwaters' argument that because its alleged civil conspiracy liability is of a vicarious nature, plaintiffs' civil conspiracy claim against it must be dismissed based upon the dismissal of the claims against Mr. Davidson. Even though courts have recognized that civil conspiracy is "a means for establishing vicarious liability for the underlying tort," see, e.g., Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983), this statement simply means that a civil conspiracy claim is not an independent claim, but rather requires an underlying tort. See Beck v. Prupis, 529 U.S. 494, 503 (2000).

Moreover, the relationship between master and servant in the respondeat superior context is not comparable to the relationship between co-conspirators. Under the respondeat superior doctrine, the master is liable for the action of his servant by virtue of a relationship, not by his own action, whereas in a civil conspiracy, both parties take some action to carry out the conspiracy.

Here, the underlying alleged fraud committed by Mr. Davidson exists as an underlying tort to the civil conspiracy claim against Headwaters. Additionally, plaintiffs point to evidence in the record, that, when viewed in the light most favorable to plaintiffs as the non-moving party, could lead a reasonable jury to find that Headwaters participated in the alleged underlying fraud by Mr. Davidson against plaintiffs. For example, Mr. Davidson, in his settlement agreement with plaintiffs, stated under oath that he told Headwaters about all of his misrepresentations to plaintiffs and his conduct involving plaintiffs (namely, the dissolution of the First Adtech and the incorporation of the Second Adtech). Plaintiffs suggest that, if Headwaters knew about Mr. Davidson's misrepresentations and the dissolution of the First Adtech, then Headwaters knowingly prepared fraudulent closing documents transferring the '629 patent to Mr. Davidson and then from Mr. Davidson to Headwaters and filed misleading documents with the PTO. We are not prepared to say that a reasonable jury could not find that Headwaters, in committing these actions, assisted Mr. Davidson in carrying out the alleged fraud on plaintiffs.

We therefore conclude that the district court erred in granting summary judgment on the civil conspiracy claim in favor of Headwaters and vacate the court's judgment as to the civil conspiracy claim.

IV.

Our vacatur of the district court's ruling regarding the civil conspiracy claim necessarily requires the vacatur of the district court's ruling on the constructive trust claim. The district court granted summary judgment in favor of Headwaters on the constructive trust claim, based upon its conclusion that "[p]laintiffs no longer have any substantive claim remaining in this case and thus cannot support their request for the imposition of a constructive trust." Order Dismissing Civil Conspiracy and Constructive Trust Claims, slip op. at 58. A constructive trust may be imposed where a person "obtains title to property by fraud, duress or other inequitable means." Stewart v. Sewell, 215 S.W.3d 815, 826 (Tenn. 2007). As we have explained above, the civil conspiracy claim against Headwaters is still a viable claim based on Mr. Davidson's underlying alleged fraud. Thus, Mr. Davidson's underlying alleged fraud also serves as a substantive claim for which a constructive trust could be imposed as a remedy. Accordingly, we vacate the court's grant of summary judgment regarding the constructive trust claim.

V.

In sum, because Mr. Davidson's underlying alleged fraud can serve as an underlying tort for plaintiffs' civil conspiracy claim against Headwaters and as a basis for the imposition of a constructive trust, we vacate the district court's grant of summary judgment in favor of Headwaters as to the civil conspiracy and constructive trust claims. We, however, affirm the district court's dismissal of plaintiffs' patent infringement claim on the pleadings and plaintiffs' interference with contract claim on summary judgment.

For the foregoing reasons, the decision of the district court dismissing plaintiffs' patent infringement claim on the pleadings and plaintiffs' civil conspiracy, interference with contract, and constructive trust claims on summary judgment is affirmed-in-part and vacated-in-part. The case is remanded to the district court for further proceedings consistent with this opinion with respect to plaintiffs' civil conspiracy and constructive trust claims.